## STATE OF MONTANA ex rel. Keith C. MORTON, Applicant,

v.

## NORTHERN PACIFIC RAILWAY COMPANY, Respondent.

## STATE OF MONTANA ex rel. Robert E. KUNTZ, Applicant,

v.

## NORTHERN PACIFIC RAILWAY COMPANY, Respondent.

## STATE OF MONTANA ex rel. Gene A. PICOTTE, Applicant,

v.

## NORTHERN PACIFIC RAILWAY COMPANY, Respondent.

## STATE OF MONTANA ex rel. John W. MAHON, Applicant,

v.

## NORTHERN PACIFIC RAILWAY COMPANY, Respondent.

### Civ. Nos. 1794–1797.

United States District Court
D. Montana, Billings Division.

Feb. 1, 1957.

Ralph J. Anderson, Helena, Mont., for applicants.

Coleman, Jameson & Lamey, Robert P. Davidson, Billings, Mont., M. L. Countryman, Jr., St. Paul, Minn., for respondent.

PRAY, District Judge.

It is agreed that the above entitled causes are all alike and counsel have elected to file briefs herein that apply to each and all of them alike. The said actions were commenced in the First Judicial District of the State of Montana, in and for the County of Lewis and Clark, and in each an alternative writ of mandate was secured requiring the respondent to convey to the applicant in each action the quarter section of land involved therein upon payment by each applicant to the respondent the sum of $2.50 per acre, or to show cause on a date certain why the said writ had not been complied with.

Thereafter all of said actions were removed to the above entitled court by the respondent, and motions filed herein to quash each and all of said actions, and also seeking an order quashing the affi-

davit and application for writ of mandamus, the order granting alternative writ of mandamus and the alternative writ of mandamus in each action.

The motions are identical in all of said actions and the grounds alleged are (1) that the Congressional Acts and Resolutions involved do not specially enjoin upon the respondent any duty resulting from any office, trust or station to perform the acts sought to be commanded, and (2) that it appears upon the face of said papers that there is a speedy remedy in the ordinary course of law and equity for the enforcement of the rights which relator may have or claim under the Acts and Resolutions.

Applicants assert that apparently the second ground appearing in the motions is not relied upon by counsel for respondent as no argument appears in the briefs in support thereof, and for that reason counsel for applicants have given no consideration to the second ground set forth in respondent's motions.

Applicants assume that the issue here, from the standpoint of respondent, is as stated on page 3 of respondent's brief, and is whether or not what is designated as the settlement and preemption proviso of the Joint Resolution of Congress of May 31, 1870 (Res. 67, 16 Stat. 378) applies to the lands here involved which are lands acquired by the respondent in what is known as the second indemnity strip provided for by the Joint Resolution above referred to, wherein the proviso reads as follows:

"Provided, that all lands hereby granted to said company which shall not be sold or disposed of or remain subject to the mortgage by this act authorized, at the expiration of five years after the completion of the entire road, shall be subject to settlement and preemption like other lands, at a price to be paid to said company not exceeding two dollars and fifty cents per acre;"

In respect to the meaning of this proviso the position of the respondent is to the effect that the lands here in question in these four actions are not to be considered as lands "hereby granted".

It seems to be understood and authoritatively determined that lands described as granted lands are those within the place limits, as distinguished from those lands which are within the indemnity limits, as was held in Prest v. N. P. R. Co., May 23, 1884, 2 Land Dec. 506:

"Lands within indemnity limits are not granted lands. The company as to those lands does not claim to acquire title until actual selection."

It was stated by Secretary Lamar in Northern Pacific v. McRae, 6 Land Dec. 400:

"Now, the grant provided for in its act of incorporation is every alternate section of public land not mineral (except coal and iron) designated by odd numbers to the amount of twenty alternate sections per mile on each side of said railroad line, through the Territories of the United States, and ten sections per mile on each side of said railroad whenever it passes through any State.

"I am clearly of the opinion that by the joint resolution of May 31, 1870, Congress intended that the grant of twenty sections per mile on each side of the road to aid in the construction of said road should be extended to the whole line of the road including that part of the main line via the valley of the Columbia river through Portland to Puget Sound. This conclusion based alone upon the language of the joint resolution would be confirmed, if confirmation was necessary, by the debates in Congress upon said resolution while it was pending and make clear the manifest purpose of said resolution."

The debates quoted by the Secretary seem to confirm fully his opinion above noted.

In Hewitt v. Schultz, 180 U.S. 139, 21 S.Ct. 309, 311, 45 L.Ed. 463, it was

held, and likewise in the many cases cited, that "all speak of the granted lands as those within the place limits".

In United States v. Northern Pacific Railway Company, 311 U.S. 317, 61 S.Ct. 264, 269, 85 L.Ed. 210, known as the Land Grant Case of 1940, the court seems to have decided questions of special significance here, and among other things said:

"May 31, 1870, Congress again authorized the company to issue bonds to aid in the construction and equipment of its road, to be secured by mortgage on all of its property, railroad, land grant, and franchise to be a corporation. It further authorized the location and construction of the main railroad via the valley of the Columbia River to Puget Sound and of a branch from the main line across the Cascade Mountains to Puget Sound, and made a grant of land in connection with the construction authorized between Portland and Puget Sound, on the same terms as the original grant. It also provided a second indemnity belt extending ten miles beyond the first on either side of the right of way. * * *.

"The Resolution of May 31, 1870, granted, as respects the additional line authorized between Portland and Puget Sound, place and indemnity lands, as granted for the original line by the Act of 1864. It also authorized what are spoken of as 'second indemnity' belts ten miles wide, on either side of the original indemnity limits, in any state or territory in which the company could not obtain the number of sections intended for it by its charter. * * *."

Counsel for the respective parties to the actions seem to be in accord in regard to the quoted part of the decision of the Supreme Court in Southern Pacific R. Co. v. Bell, 183 U.S. 675, 679, 22 S.Ct. 232, 237, 46 L.Ed. 383, found on page 13 of applicants' brief, and page 8 of respondent's reply brief, which is in the following language:

"Undoubtedly the company acquires title to both classes of lands by the 3d section of the granting act; but it acquires a title to lands within the place limits by a present grant; but to land within the indemnity limits, only by a future power of selection. In both cases the statute is the origin of the title; but in the one case it gives instantaneously; in the other it is a mere promise to give in the future, and requires the action of the railroad to perfect it. The words 'hereby granted' evidently refer to the former."

The resolution aforesaid, which the court has considered, and which has been considered and passed upon by other courts, provides that all lands *hereby granted* to said company shall be subject to settlement and preemption like other lands. It seems quite evident that Congress limited the application of the proviso in the Joint Resolution to "all lands hereby granted", and the meaning of that phrase seems to have been very clearly defined in the two cases of Southern Pacific R. Co. v. Bell, 183 U.S. 675, 679, 22 S.Ct. 232, and Hewitt v. Schultz, 180 U.S. 139, 21 S.Ct. 309, and that Congress intended in the language employed only the sections of land wherein title vested in the company in praesenti.

After going over the many authorities cited and relied upon counsel for respondent makes the following pertinent inquiry: "How can the applicants seriously urge that by the foregoing language Congress was making a grant of land in the second indemnity strip in Montana?"

Contention of respondent is that the company acquired title to the indemnity lands between Portland and Puget Sound only by a future power of selection. As to lands east of the Portland-Puget Sound line, the company acquired no title under the Joint Resolution. The res-

olution specified that lands in the second indemnity strip could be selected only in the same State in which there might be a deficiency in the original grant for that State. In Montana, it required first a grant for the place limits by the Act of 1864, 13 Stat. 365, and second, a deficiency in those place limits granted in Montana by the Act of 1864. That the origin of the title for all lands in Montana was in sections 3 and 6 of the Act of 1864.

It was a bone of contention in the land grant case of 1940, United States v. Northern Pacific R. Co., 311 U.S. 317, 61 S.Ct. 264, that Montana was included in the settlement and preemption proviso but the court held that it applied only to the new grant of lands between Portland and Puget Sound, and the decree of Judge Schwellenbach in D.C., 41 F.Supp. 273 seems applicable here, and our own Court of Appeals in the Ninth Circuit, has given support to that view in Russell v. Texas Company, 238 F.2d 636, wherein a rehearing has recently been denied (January 21, 1957).

After due consideration of the able arguments of counsel for the respective parties it seems to have been clearly established that the Joint Resolution granted no lands in Montana; that it made a new grant between Portland and Puget Sound; that the term "hereby granted" in the settlement and preemption proviso applied only to the place lands in the new grant, and that the issue here has already been decided. A further citation of cases and discussion of questions raised in the voluminous briefs would seem unnecessary since it now appears convincingly that the issue presented here has already been definitely decided between the parties, leaving no issue to the applicants for further litigation, consequently, being duly advised, and good cause appearing therefor, in the opinion of the court, the said motions to quash in the pending cases should be granted, and such is the order of the court herein. Exceptions allowed counsel.